## JOSEPH KEYES *et al. versus* The Inhabitants of WESTFORD.

A committee appointed by the vote of a town, "to let out and superintend the making" of a new highway, which the town had been ordered by the county commissioners to make, contracted, on behalf of the town, with F. for the construction thereof; and F. proceeded to construct so much of the highway as he contended he was bound to do, and declined doing any thing further. It was *held*, that the vote of the town conferred a special authority on the committee, which was completely executed by the making of such contract and superintending the construction of the highway; that if F. did not fulfil his contract, the power and duty devolved on the town to insist upon or waive its execution ; that consequently it was not competent for the committee, without a new authority from the town, to enter into a new contract for the completion of what was left unfinished by F.; and that the town was not liable for money paid by the committee in pursuance of such new contract.

In the same case it appeared, that the contract with F. provided for the construction of a better but more expensive road than was prescribed by the order of the county commissioners. It was *held*, that the reference to the order of the county commissioners, limited the authority of the committee ; that the contract with F. was an excess of their authority ; and that the second contract, to complete the road, was founded in a like excess of authority, and therefore imposed no obligation on the town.

*It seems*, that the town itself would not have been authorized to construct the highway in a more expensive manner, than was prescribed by the order of the county commissioners.

THIS was an action of assumpsit brought by Joseph Keyes, Asia Hamlin and Nahum H. Groce, alleging themselves to be " a committee to let out and superintend the making the road near Ira Leland's," in Westford, to recover the sum of $470·69, paid by them to William Bunker and others, who were employed in the construction of the road.

The trial was before *Morton* J.

It appeared, that the road in question was located by the county commissioners and accepted in September 1832 ; and that it was ordered by the commissioners, that the carriageway should be twenty-four feet in width, that the hills should be reduced to an angle of elevation not exceeding five degrees, and that the road should be completed by the town by the 1st of May, 1833.

A town meeting of the town of Westford was held on November 12, 1832, in pursuance of a warrant containing the following article : " To choose committees and hear the re

ports of committees, particularly to let out the building of a road lately laid out by the county commissioners at the Samuel Read hill, so called." The road referred to in this article was the highway in question. The vote of the town upon this article was as follows : " Voted and chose Joseph Keyes, Esq., Asia Hamlin and Samuel Fletcher 2d, committee to let out the road located near Ira Leland's, and superintend the making of the same."

On December 18, 1832, Keyes and Hamlin, on behalf of the town, entered into a contract under seal with Fletcher, the other member of the committee, by which it was stipulated, that Fletcher should construct the road by the 1st of May then next ensuing ; that the carriage-way should be made in some places twenty-eight feet and in others thirty feet wide ; that the angles of elevation should in some places not exceed three and a quarter degrees and in no place four degrees ; that the road should be made to the acceptance of the committee, and of such other person as the town should choose for that purpose, if they should see fit ; and that if it were not completed according to such contract, all claim for compensation should be forfeited.

On July 3, 1833, another town meeting was held in pursuance of a warrant containing the following among other articles : " 2d. To see if the town will pay Samuel Fletcher 2d for making a new piece of highway commencing near Ira Leland's in Westford, or take any measures in regard to the same ; " and, " 3d. To hear the reports of committees, and choose committees." The following votes were passed : " 2d. Voted to have the contract, between Samuel Fletcher 2d and the town, read ; " " 3d. Voted to dismiss the 2d. article in the warrant ; " " Voted to choose one in addition to the committee to let out said road in question ; " " 5th. Chose Nahum H. Groce, Esq. said addition to the committee above named."

It further appeared, that Fletcher, in pursuance of the contract, proceeded to construct the road so far as he thought he was bound to do, and declined doing any thing further, there being however a dispute between him and a majority or all of the committee, as to this point ; that about September 29,

1833, the plaintiffs, as a committee of the town, " chosen to let out and superintend the making and completing of a new piece of highway near Ira Leland's," entered into a contract, under seal, in behalf of the town, with William Bunker, by which it was stipulated, that Bunker should " perform and faithfully lay out on said road an amount of labor not less than $400, and if said committee require, equal to $450," at an agreed rate per day for himself, his laborers and teams ; and that the committee, on behalf of the town, should pay him, on the completion of the labor.   The work was accordingly done by Bunker, and paid for by the plaintiffs.

Upon this evidence the defendants contended ; 1. That the powers of the committee extended only to the making of a contract for the building of the road, and to the superintendence of its execution, as the agents and trustees of the town ; and that they had no right to desert this trust and assume the character of creditors of the town, by building the road themselves ; 2. That if under any circumstances they would have had a right to complete the road themselves, it would not be till after a proper contract had been made pursuant to the vote of the town, which was not performed ; but that the contract with Fletcher was not pursuant to such vote, as it required more to be done than was prescribed by the order of the county commissioners ; 3. That the contract with Bunker was a contract with the town, if the committee had authority to make it, and that in such case the payment by the committee was officious, and the town was not liable for it ; 4. That all the committee ought to have joined in the action.

These objections were all overruled *pro formâ*, and reserved for the consideration of the whole Court.

The jury found a verdict for the plaintiffs.   If the Court should be of opinion that the plaintiffs were not entitled to maintain this action, the verdict was to be set aside and the plaintiffs were to become nonsuit ; otherwise the verdict was to be set aside and the cause to stand for trial.

*Greenleaf* and *Joel Adams*, for the defendants.

*Lawrence*, *Metcalf* and *J. W. P. Abbot*, for the plaintiffs.   The town was not restrained by law from making the road in a better and more expensive manner than was required by the order

of the county commissioners ; and whether the committee ex-
ceeded their authority or not in making the contract with
Fletcher, their act was ratified by the proceedings of the town
in July 1833.　If therefore the contract with Bunker is pre-
sumed to have been made for the purpose of completing what
Fletcher left unfinished, it had the sanction of the town.

But the contract with Bunker makes no reference to the
contract with Fletcher, and it does not appear that Bunker's
contract required him to perform, or that he did perform, any
thing beyond what was prescribed by the county commis-
sioners.

The contract of Bunker was not with the town, though
intended to be so, but bound the plaintiffs personally.　He
had a remedy against them, and the payment by them was not
officious or in their own wrong, but was lawful and made in
good faith and for the benefit of the town, and gives them a
right to recover over against the town.　*Child* v. *Morley*, 8
T. R. 610 ; Paley on Pr. and Agents, c. 2, § 2 ; *Tolman* v.
*Marlborough*, 3 N. Hampsh. R. 59 ; *Sanborn* v. *Deerfield*,
2 N. Hampsh. R. 251 ; *Hartwell* v. *Littleton*, 13 Pick. 229 ;
*D'Arcy* v. *Lyle*, 5 Binn. 441 ; *Ramsay* v. *Gardner*, 11 Johns
R. 439 ; *Powell* v. *Newburgh*, 19 Johns. R. 284 ; *Bolton* v.
*Hillersden*, 1 Ld. Raym. 224.

SHAW C. J. delivered the opinion of the Court.　Several
questions have been proposed and discussed in the present
case, which we think it is not necessary to consider in deciding
it.　The Court are of opinion, that the plaintiffs are not enti-
tled to recover ; and one objection decisive in their minds is,
that in making the contract with Bunker, and especially in
paying him according to that contract, the plaintiffs wholly ex-
ceeded their authority, and did not thereby become entitled to
maintain an action as upon an implied contract against the town.

After the road was laid out by the county commissioners,
the location, direction, width and mode of making, being all
determined by the act and order of the commissioners, the
town, pursuant to law, were required to make it, and a time
was allowed for that purpose.　It was to provide for the per-
formance of this public duty, imposed on the town by law,
that the inhabitants were warned to meet on November 12,

1832, to choose a committee " to let out the building of a road lately laid out by the county commissioners " &c. And the vote of the town thereupon was to choose Keyes and Hamlin, two of the plaintiffs, together with Samuel Fletcher 2d, a committee to let out the road located, &c. and superintend the same.

We think the plain and obvious construction of this vote was to confer a special authority on the committee, to enter into a contract with some person in the name and behalf of the town, to have such a road constructed, as the town was bound by law to make, that is, such a road as the competent officers of the public for that purpose, had required them to make, and to superintend the work and the execution of such contract in its progress. And so it is obvious that they themselves understood it, because two of the committee, a majority, in the name and behalf of the town, proceeded to enter into a contract with the other member of the committee, to make the road therein described. It is true that in many respects it was to be wider, more level, and more expensive, than the road as laid out by the commissioners. But the stipulations and engagements, in this contract, were made by and with the town, as a party, and the committee profess to act merely as agents. Whether this contract would have been binding on the town notwithstanding the objections, that it was not made on behalf of the town by all the committee, and that one of the committee could not be a contractor, had the town elected to repudiate the contract, is immaterial to this inquiry. The plaintiffs, Keyes and Hamlin, are not at liberty to say, against their own act, that the contract was void ; and as the ground of objection is a want of authority, the contract being made in the name of the town by agents professing to be authorized, it was competent for the town to adopt and treat it as their own, as if it had conformed in all respects to the origina authority ; it was for them to decide whether they would do so, and it was not competent for the committee to set up the want of authority in themselves to make the contract upon the terms or in the form, in which it was made in behalf of the town, so as to bind them in their corporate capacity. Then, as this contract embraced the whole subject matter of the vote

under which the committee was appointed, it was a complete execution of their power. If Fletcher did not execute his contract according to its terms, the power and duty devolved upon the town, as the contracting party, to insist upon or waive the execution of the contract, or to accept a part-performance for the whole, or to enforce the forfeiture, according to their views of justice and expediency ; and it was not competent to the former committee, without a new authority, to enter into a new contract, for the completion of what had been left undone by Fletcher.

But there is another objection, in our view, equally decisive against the right of the plaintiffs to recover in this action.

It appears by the contract made with Bunker, taking it in connexion with the contract with Fletcher, which is made part of the case, that the first contract provided for a road, to be made with a wider travelled path, with the angles of elevation smaller, and in these respects more expensive, than the road contemplated and ordered by the county commissioners, that Fletcher executed his contract to the extent, as he contended, to which he was bound to do it, and there stopped. This the other members of the committee denied. And they therefore proceeded to enter into a new contract with Bunker to work by the day, to complete what Fletcher had left unfinished, and to make the road conformably to what was contemplated in the contract with Fletcher. And it is for the money paid by the plaintiffs to Bunker upon this last contract, that the present action is brought. Now the defence of the town to this claim is, that supposing the original authority of the committee was, to make and finish the road, as the commissioners ordered it, and for that purpose to make contracts *toties quoties*, till the work should be completed as thus ordered, and that no objections could be made to the form in which they had contracted with Fletcher, still, that as in making the contract with Fletcher they stipulated for a better and more expensive road than that ordered by the commissioners, they exceeded their authority to the extent of such increased expense, and as the contract with Bunker was to do what Fletcher had left unfinished, it was alike an excess of authority, and having themselves paid for this work, the town was not bound to reimburse them.

On the part of the plaintiffs it is contended, that it is competent for a town to make a better, more complete, and more expensive road for the town, than the commissioners have thought it expedient to order, and as such a road has been made in the present case, the town have the benefit of it, and are bound in equity as well as in law, to pay for making it.

Whether, when the county commissioners have laid out a public highway, for the common convenience of all the inhabitants of the Commonwealth, which it is by law the duty of a town as such to make, the town can by a formal vote, make a more expensive road than required by the commissioners, is a question which does not necessarily arise in this case, for reasons to be hereafter stated. The construction of the road, as ordered by the proper tribunal, the county commissioners, is a public duty of towns, and it is to be borne by an equal tax on the inhabitants. But that a town, by the vote of a majority, can go beyond that, construct a paved road, for instance, or other expensive improvement, however useful or ornamental, and assess the expense upon the town, by a tax upon all the inhabitants, as well those who dissent as those who assent to it, is a proposition, which for myself I should pause upon long, before acceding to it. But whatever might be the authority of a town in such case, acting by an express and unequivocal vote, we perceive no ground for maintaining that the town did so act or vote in the case before us. The road, for the making of which the committee were authorized to contract, was the road laid out by the commissioners. By this express reference to the act and order of the commissioners, that act describes and limits the authority of the committee of the town. The act of the committee, therefore, in making provision for a more complete and expensive road, was so far an excess of authority, and it follows as a necessary consequence, that the contract with Bunker, to make good the deficiencies of the first contract, was founded in a like excess of authority, and therefore imposed no obligation upon the town.

Without considering several other questions which were discussed at the argument, we are of opinion, that the plaintiffs are not entitled to recover, and that the nonsuit must stand